**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-01061-MSK-KMT

**WALID MOAZ,**

 Plaintiff,

v.

**SAFEWAY INC.,**

 Defendant.

___

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
___

 **THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 64).** Mr. Moaz has not filed any response to that motion.

 Where a party fails to respond to a motion for summary judgment, the Court does not reflexively grant relief to the movant; rather, it must examine the movant's submissions to determine whether the movant has met it's burden of demonstrating that no material issues of fact remain for trial. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002); Fed. R. Civ. P. 56(e)(3). In doing so, however, the Court will deem Mr. Moaz to have conceded the truth of any properly-supported facts alleged by the Defendant. Fed. R. Civ. P. 56(e)(2). With that standard in mind, the Court turns to the facts asserted in the Defendant's motion.

 Mr. Moaz was employed as a "Fuel Center Lead" in one of the Defendant's gas stations. His direct supervisor was Store Manager Brett Clousing. In December 2009, Mr. Clousing issued a verbal warning to Mr. Moaz as the result of several customer complaints that Mr. Moaz

had been rude to them. When Mr. Clousing attempted to meet with Mr. Moaz to discuss the matter and present Mr. Moaz with a copy of a document memorializing the warning, but Mr. Moaz refused to sit down or take a copy of the document. Mr. Clousing read the document aloud to Mr. Moaz, who responded that "You will find out who Walid Moaz really is!" Mr. Clousing asked if Mr. Moaz was threatening him, Mr. Moaz merely repeated the statement. Both Mr. Clousing and another employee present at the meeting felt threatened by Mr. Moaz's statements.

Two days later, another customer complained about Mr. Moaz's behavior, and on January 6, 2010, Mr. Clousing decided to issue a final written warning to Mr. Moaz. During the meeting in which Mr. Clousing conveyed that warning to Mr. Moaz – a meeting that was witnessed by Assistant Manager Kevin Bitterman and Security Investigator Jim Nagler – Mr. Clousing felt that Mr. Moaz's demeanor was disrespectful and threatening. Mr. Moaz stated to Mr. Clousing that "if a customer does not respect me, I will not respect them."

After that meeting, Mr. Nagler began an investigation into Mr. Moaz's threatening behavior. During the course of that investigation, he interviewed Mr. Moaz. Mr. Moaz initially denied having made the "you will find out who Walid Moaz really is" statement and accused Mr. Clousing of lying about it, but later conceded that he had made the statement. Mr. Moaz also denied making the "if a customer does not respect me, I will not respect them" statement, and accused Mr. Nagler of lying about having heard Mr. Moaz make such a statement. Mr. Nagler suspended Mr. Moaz due to his verbal threats and threatening behavior. Later, as Mr. Nagler was interviewing another employee witness to the December 2009 meeting, Mr. Moaz called the employee on the store phone line, telling her "don't you tell security anything about me."

Mr. Nagler informed the Defendant's Manager of Labor Relations, Gary Pickel, about the results of his investigation, and Mr. Pickel decided to terminate Mr. Moaz's employment based on Mr. Moaz's "repeated instances of unprofessional behavior."

Mr. Moaz's *pro se* [1] Amended Complaint **(# 7)** purports to assert claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, sounding in national origin discrimination (Mr. Moaz is of Egyptian descent). To establish a claim of national origin discrimination, Mr. Moaz bears the burden of demonstrating a prima facie case that: (i) he is a member of a protected class; (ii) he possessed the objective qualifications for the position he occupied; (iii) he suffered an adverse employment action; and (iv) that action occurred in circumstances giving rise to an inference of discrimination. If Mr. Moaz carries this burden, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action, and Mr. Moaz bears the ultimate burden of demonstrating that the Defendant's proffered reason is a a pretext for discrimination. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Assuming, without necessarily finding, that Mr. Moaz could establish a prima facie case on the undisputed facts here, the Defendant has carried its burden by proffering a legitimate, non-discriminatory reason for Mr. Moaz's termination: namely, that Mr. Moaz had demonstrated unprofessional, rude, and threatening behavior towards the Defendants' customers and his co-workers. Thus, the question is whether, on the facts set forth above, Mr. Moaz can show a genuine dispute as to whether the Defendant's proffered reason for his termination is pretextual – that the stated reason is untrue, and that national origin discrimination is the real reason.

---

[1] Given Mr. Moaz's *pro se* status, the Court has construed his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

When evaluating allegations of pretext, the Court is mindful that it must examine the facts as they appeared to the decisionmaker, not based on the employee's subjective evaluation of the situation. *Luster v. Vilsack*, 667F.3d 1089, 1094 (10th Cir. 2011). The question is not whether the employer's stated reason for the adverse action is ontologically true, but only whether the employer honestly believed that reason to be true. *Id.* at 1094.

Here, the question is not whether or not Mr. Moaz actually threatened employees of the Defendant (or whether he was rude to customers), but whether Mr. Pickel, as the person making the decision to terminate Mr. Moaz, subjectively believed that Mr. Moaz had made threatening statements and been rude to customers. On the record presented here, Mr. Pickel was informed of Mr. Moaz's conduct by Mr. Nagler. Mr. Nagler reported that he was an eyewitness to Mr. Moaz's statement that he would not respect a disrespectful customer, that he was also present when Mr. Moaz instructed another employee not to Defendant's security about him, and that Mr. Moaz had admitted him that he had stated "you will find out who Walid Moaz really is." Mr. Nagler also reported to Mr. Pickel that there had been customer reports of Mr. Moaz being rude. On the other hand, there is no evidence in the record to suggest that Mr. Pickel was even aware of Mr. Moaz's national origin, much less that his national origin was considered in any way by Mr. Pickel in making the decision to terminate.[2]

---

[2] The Defendant anticipated that Mr. Moaz's summary judgment response would "rely on a single word he attributes to Mr. Clousing as evidence of pretext," but the Defendants' motion does not elaborate, much less cite to evidentiary material in which Mr. Moaz describes this event. Based on the Court's knowledge of other material in the record, the Court understands this allegation to be that, after Mr. Moaz had been informed of his termination, Mr. Clousing referred to Mr. Moaz as a "raghead." Even assuming that such an allegation was properly before the Court on this summary judgment record – and it is not – the Court notes that this comment post-dates the adverse employment action at issue, and it was made by someone other than the

Accordingly, the Court finds that nothing in the record demonstrates that Mr. Moaz can establish a genuine dispute of fact as to whether the Defendants' proffered reason for his termination is pretextual, and thus, the Defendant is entitled to summary judgment on Mr. Moaz's claim.[3]

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 64)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant and against Mr. Moaz on the claim(s) in this case.

Dated this 19th day of March, 2013.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge

---

decisionmaker, Mr. Pickel. Thus, any such remark by Mr. Clousing, even if were made, would not be sufficient to demonstrate pretext.

[3] The Defendant believes that Mr. Moaz also asserts a retaliation claim, arising from the same events. It is not clear to the Court that the Amended Complaint is susceptible to such a reading, but assuming it is, Mr. Moaz ultimately bears the same burden to demonstrate that the Defendant's proffered non-retaliatory explanation for his termination is pretextual. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). For the same reasons stated above, Mr. Moaz cannot make such a showing of pretext on this record, and thus, the Defendant would be entitled to summary judgment on any retaliation claim as well.